**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **JUDY HENRY O/B/O JOHN HENRY (deceased)** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. TMD 08-686 |
| ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Judy Henry, on behalf of her ex-husband, John Henry ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § § 401-433, § § 1381-1383(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Paper No 15) and Defendant's Motion for Summary Judgment. (Paper No. 18). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is Granted.

### I. Procedural History

Plaintiff filed his applications for DIB and SSI on January 17, 2002 alleging disability since July 2, 2001 due to pulmonary embolism. R. at 19, 85-87, 103-04, 569-72. The claims

were denied initially and on reconsideration. R. at 46-48, 49-53, 54-57, 573-76, 579-81. On September 30, 2004, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 614-40. Plaintiff was represented by counsel. In a decision dated December 7, 2004, the ALJ denied Plaintiff's request for benefits. R. at 31-41. Although Plaintiff passed away on December 14, 2004, his former wife continued the case and requested a review and on October 6, 2005, the Appeals Council remanded the case for further proceedings. R. at 42-45.

A supplemental hearing was held on September 12, 2006 at which Plaintiff's ex-wife and a VE appeared and testified. R. at 641-83. Plaintiff's ex-wife was not represented by counsel. The ALJ again denied benefits by a decision dated May 19, 2007. R. at 19-28. Plaintiff sought review and the Appeals Council affirmed the ALJ's decision on January 15, 2008 making this action ripe for review. R. at 7-9.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claims for DIB and SSI using the sequential processes set forth in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920. At the first step, the ALJ determined Claimant had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: hypercoagulativity with recurrent deep venous thrombosis and pulmonary emboli, chronic obstructive pulmonary disease ("COPD"), lumbar degenerative disc disease, myofacial pain syndrome and obesity. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff was not capable of performing his past relevant work. At step five, the

ALJ concluded that Claimant was capable of performing jobs that that existed in significant numbers in the national and local economy. Accordingly, he concluded that Claimant was not disabled. R. at 19-28.

### III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

### IV. Discussion

Plaintiff contends that (1) the ALJ failed to follow the order of the Appeals Council; (2) the ALJ erroneously assessed Plaintiff's residual functional capacity ("RFC"); (3) the ALJ erroneously evaluated Plaintiff's subjective complaints; (4) the ALJ failed to follow the proper procedure for analyzing mental impairments; (5) the ALJ failed to properly consider Plaintiff's

obesity; and (6) the ALJ failed to follow the treating physician rule.

      A.  Order of the Appeals Council

Plaintiff contends that the case should be remanded because the ALJ did not follow the Order of the Appeals Council which stated that the ALJ will "[a]s appropriate, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments . . ." R. at 44. At the outset, the Court notes that failure of an ALJ to follow the precise dictates of an Order of Remand from the Appeals Council does not automatically warrant a remand. While 20 C.F.R. § 416.1477(b) states that on remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeal's Council remand order," the Commissioner's "final decision denying benefits must be affirmed unless the findings are based on legal error or are unsupported by substantial evidence." *See Vern off v. As true*, 568 F.3d 1102, 1105 (*citing Mayes v. Missionary,* 276 F.3d 453, 458-459 (9th Cir.2001)); *Gallegos v. Patel*, No. 97-2267, 1998 WL 166064, at *1 (10th Cir. April 10, 1998); *Wilkins v. Barnhart*, No. 02-4302, 2003 WL 21462579, at * 3 (7th Cir. 2003); *Figaro v. As true*, No. CV 08-01615, 2010 WL 273168, at * 3 (C.D. Cal. Jan. 14, 2010) ("regardless of whether the ALJ fully complied with the Appeals Council's remand order, judicial review is limited to the question whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards"). Therefore, as we have previously held, regardless of whether the ALJ fully complied with the Appeals Council's remand order, judicial review is limited to the question of whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards. *See, e.g., Jose Fuentes v. As true,* Civil Action No. TMD 07-2007, (D. Md. Aug. 18, 2008).

Next, here Plaintiff ignores the wording chosen by the Appeals Council which was to obtain evidence from a medical expert "as appropriate" which implies that the ALJ was granted some discretion in determining whether it was necessary to call a medical expert. Accordingly, to the extent the Plaintiff disputes the findings of the ALJ with respect to the nature and extent of Plaintiff's impairments, the Court will analyze those findings in connection with Plaintiff's argument that the ALJ did not properly assess Plaintiff's RFC below.

B. Plaintiff's RFC

The ALJ found that Plaintiff retained the ability to perform the exertional demands of light and sedentary work. He further found that Plaintiff's ability to perform the full range of this exertional work was reduced as follows: no reaching, handling, lifting or carrying objects above shoulder height; no climbing ladders, ropes or scaffolds; no exposure to hazardous heights or hazardous moving machinery; no exposure to extreme temperature changes; and low stress work. He further found Claimant had moderate pain and limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary tolerances, and as to completing a normal work day or work week without an unreasonable length and number of rest periods. Finally, the ALJ limited Plaintiff to work without concentrated exposure to excessive vibration or dusts, fumes, chemicals, poor ventilation or excessive humidity or wetness.

Plaintiff claims multiple errors with respect to the ALJ's RFC analysis including the ALJ's failure to include any limitation regarding his ability to stand, walk, sit or to perform postural activities. The Commissioner concedes as much but points to the hypotheticals posed to the VE which included various limitations regarding these activities and the fact that the VE

5

found jobs that existed in significant numbers in the economy based on these hypotheticals. The ALJ presented to the VE an individual limited to four hours of walking/standing and sitting for six hours. R. at 674. He next included these restrictions and also added no kneeling. *Id*. The ALJ then asked the VE to assume an individual who could only stand/walk for two hours and sit for six hours in an eight-hour workday. *Id*. In reliance on these hypotheticals, the VE found six occupations that could fit within the first and second hypotheticals – three of which would also meet the third hypothetical. The ALJ relied upon these occupations which existed in significant numbers in the economy and found that Claimant was capable of making a successful adjustment to this work. R. at 28. While the ALJ should have specifically articulated these limitations in his RFC finding, the Court is not left to speculate with the respect to his findings regarding these limitations and any error is harmless. Indeed, the ALJ specifically stated that Claimant's complaints that he could not endure prolonged walking, standing or sitting "was made part of the hypothetical's submitted to the [VE] with the [VE] identifying work that existed in significant numbers in the national and regional economies." R, at 23.

    Plaintiff next asserts that the ALJ failed to analyze his bipolar disorder. There is scant medical evidence in the record regarding any mental impairment. While an admission note from Southern Maryland Hospital Center references an admission to Prince George's Hospital Psychiatry Department in December 1999 and a short stay at the state hospital afterward, the notes further indicate that as of December, 2001, he has been doing "ok". R. at 159. In addition, Dr. Ansari indicated on July 18, 2002 that Claimant did not suffer from any mental illness. R. at 263. The Court agrees that Claimant did not meet his burden at step two to even

establish that any mental impairment constitutes a severe impairment. However, even if non-severe, an impairment may cause restrictions on a person's daily living activities. Again, Claimant has not demonstrated that his bipolar disorder causes any limitations more restrictive than those found in the RFC.[1]

Next, Plaintiff asserts that the ALJ mischaracterized the evidence in finding that he suffered from only "mild" lumbar degenerative disease and that he did not suffer from cervical or thoracic disc problems. R. at 24. In making this argument, Plaintiff points to various pieces of medical evidence which he asserts constitute a medical condition more severe than that found by the ALJ. Again, however, Plaintiff does not assert how these findings would dictate any limitations more restrictive than those found in the RFC. In reviewing the ALJ's decision, the Court finds that substantial evidence supports his finding. The ALJ noted that Dr. Ansari indeed diagnosed degenerative disc disease of the upper thoracic/lower cervical spine. R. at 23. He was referred to a pain clinic at which time he was diagnosed with thoracic degenerative disc disease and myofacial pain syndrome. *Id*. In addition, an MRI dated December 22, 1997, of Claimant's cervical spine was normal. R. at 455. In mid-1999, a cervical and thoracic MRI scan "fail[ed] to disclose evidence of a ruptured cervical or thoracic disc." R. at 514. No surgical intervention was recommended. *Id*. While the record does include evidence indicating Claimant suffered from cervical, thoracic and lumbar radiculopathy, this diagnosis does not alter the ALJ's RFC. The ALJ indeed found that Plaintiff suffered from myofacial pain in the

---

[1] The Court further finds that Plaintiff's argument that the ALJ improperly analyzed his mental impairment is without merit. As mentioned above, the record is virtually devoid of any evidence of a mental impairment apart from a notation with respect to Claimant's history and a further notation that he was doing well with respect to any mental impairment. There is simply insufficient evidence in the record to trigger the analysis that Plaintiff conclusorily asserts is required.

cervico-thoracic region. R. at 25. The ALJ's discussion of Claimant's back pain supports his RFC finding.

### C. Subjective Complaints of Pain

There is no merit to Plaintiff's argument that the ALJ erroneously evaluated his subjective complaints of pain. The Court notes that Plaintiff's argument is devoid of any details or substantive argument. When a claimant alleges disability due, in part, to pain or other symptoms the ALJ must apply the Commissioner's regulations, 20 C.F.R. §§ 404.1529, 416.929, which establishes a two-step process for evaluating whether a person is disabled by pain or other symptoms, *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). At the first step, the ALJ must determine that the objective medical evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged. *Id*. At the second step, the ALJ evaluates the extent to which these symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Craig*, 76 F.3d at 595. The ALJ must consider all of the available evidence including the claimant's medical history, medical signs, statements by the claimant and his treating physicians, 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1), objective medical evidence, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), and any information proffered by the claimant, such as the claimant's daily living activities, an account of what aggravates the symptoms, and a summary of how the symptoms affect daily living. 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4), *Craig*, 76 F.3d at 595.

After a careful review of the ALJ's decision, the Court finds the ALJ's pain analysis is supported by substantial evidence. The ALJ clearly found that Plaintiff had established, by objective medical evidence, the existence of medical impairments that could reasonably be

expected to produce the symptoms alleged. R. at 23. As discussed above, he found that Plaintiff had myofacial pain syndrome and lumbar degenerative disc disease. R. at 22. However, he found that the existence of these impairment produced only some of the symptoms alleged. R. at 23. He went on to the next step of the pain analysis to determine the extent that the symptoms limited his ability to work. He found that his impairments caused back pain and shortness of breath. R. at 23-24. Indeed, he credited Claimant's complaints regarding prolonged walking, standing and sitting and incorporated them into the hypotheticals to the VE. R. at 674-75. The ALJ reviewed Claimant's activities of daily living and noted he did some household cleaning, drove, grocery shopped, read, watched television, went outside on his own, and visited family and friends. R. at 26, 628. The ALJ's consideration of Claimant's daily activities was proper based on the regulations cited above. In sum, the ALJ's pain analysis is supported by substantial evidence.

### D. Obesity

Plaintiff next asserts the ALJ failed to consider obesity at steps three through five of the sequential process despite determining that it constitutes a sever impairment at step two. Despite Plaintiff's argument (which again is devoid of citation to any evidence or substantive argument), the Court finds that the ALJ did, in fact, consider Claimant's obesity after step two. Specifically, he indicated at step three that the "impact of obesity in combination with or as an aggravator of other impairments will be considered when assessing the Claimant's residual functional capacity." R. at 22. Indeed, in his opinion, the ALJ specifically noted that Claimant's back pain was "aggravated by obesity" and considered its impact when determining Claimant's RFC. R. at 24.

E. Treating Physician Rule

Plaintiff's final argument is that the ALJ violated the treating physician rule by failing to recontact Dr. Ansari about his opinion regarding Claimant's limitations. An ALJ is required to recontact medical sources only when the evidence received is *inadequate* to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). The ALJ did not determine that the records from Dr. Ansari were insufficient to determine whether Plaintiff was disabled. To the contrary, the Court finds that the ALJ's discussion of these medical records evidences that there indeed existed a sufficient basis upon which to make his finding. The ALJ noted that Dr. Ansari diagnosed Claimant with COPD, hypercoaguble state, and degenerative disc disease of the upper thoracic/lower cervical spine. R. at 23, 261-62. On July 18, 2002, he completed a medical report form in which he indicated Claimant could only sit for 2 hours and only stand and walk for one hour in an eight hour workday. He went on to opine that he could lift up to only 10 pounds. The ALJ specifically discussed these findings and rejected them on a number of bases. First, Dr. Ansari did not elaborate on how he reached these findings. The ALJ further noted that Claimant himself testified he could lift more than 10 pounds. R. at 25, 633. Finally, he noted that if Dr. Ansari's opinions were given great weight, it would mean that Claimant would be required to be in the "prone" position for twelve out of every 24 hours. There was no evidence indicating this was the case and Plaintiff's citations to the record with respect to Claimant's testimony do not suggest otherwise. Indeed, the ALJ noted that Claimant's activities of daily living (mentioned above) contradicted such a finding. In addition, Plaintiff does not dispute that Dr. Ansari in fact never limited him in such a manner. Based on these reasons, the ALJ did not accord significant weight to Dr. Ansari's findings in this regard and the decision is supported by substantial evidence.

Moreover, this discussion demonstrates that the ALJ's duty to recontact Dr. Ansari was not triggered.

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: August 12, 2010 _____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge

Copies to:
Stephen F. Shea, Esq.
801 Roeder Rd, Suite 550
Silver Spring, MD 20910

Allen F. Loucks
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692